Timothy D. ELSTEN, Appellant,

v.

STATE of Indiana, Appellee.

No. 48S00–9706–CR–367.

Supreme Court of Indiana.

Aug. 18, 1998.

H. Erskine Cherry, Anderson, for Appellant.

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

A jury convicted Timothy D. Elsten of murder, a felony,[1] and invasion of privacy, a Class B misdemeanor.[2] The court sentenced him to sixty-five years for murder, followed by one hundred eighty days for the misdemeanor.

In this direct appeal, Elsten raises four issues:

I.  Whether the trial court erred by admitting a portion of his videotaped statement to police;

II.  Whether the court's refusal to grant a change of venue was erroneous;

III.  Whether the court improperly admitted evidence seized from a vehicle he drove; and

IV.  Whether the court erred by failing to accept his plea of guilty but mentally ill during the trial.

**1.** Ind.Code Ann. § 35–42–1–1 (West Supp.1998).

## Facts

The evidence most favorable to the verdict shows that on January 13, 1996, Timothy Elsten followed his estranged wife, Diana Elsten, into a retail store in Anderson, Indiana. Diana told him to leave her alone, but he continued to follow her. When she asked a store employee to contact security, he grabbed her, pulled out a gun, and placed it against her temple. As she begged him not to shoot, he pulled the trigger, but the gun misfired. Diana then broke loose and ran from him. Timothy gave chase and fired three more shots, one of which struck her in the face and another in the back. Diana died from a bullet wound to the back.

## I.  Admission of Videotaped Statement

Elsten objects to the admission of his videotaped statement to police. He contends the questioning was improper because it continued after he requested counsel, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.

A criminal suspect has a right to the advice and presence of counsel during custodial interrogation by police. *Mayberry v. State,* 670 N.E.2d 1262, 1269 (Ind.1996), *reh'g denied* (citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Although a suspect can intelligently and voluntarily waive this right, it may be reasserted at any time during questioning. *Sleek v. State,* 499 N.E.2d 751, 755 (Ind.1986) (citing *Miranda,* 384 U.S. at 444–45, 86 S.Ct. 1602). In such cases, the interrogation must stop until counsel is provided or the suspect voluntarily re-initiates communication. *Pilarski v. State,* 635 N.E.2d 166, 169 (Ind. 1994) (citing *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)).

Elsten claims his *Miranda* rights were violated when police interrogated him after three separate requests for counsel. He fails to mention, however, that the trial court redacted the videotape so that the only statements presented to the jury were those

**2.** Ind.Code Ann. § 35–46–1–15.1 (West Supp. 1998).

made between the signing of the waiver and his first request for counsel.[3] It also admonished the jury not to speculate what occurred after the tape stopped. Thus, the only question is whether Elsten made these initial statements while knowingly and voluntarily waiving his right to counsel. This decision is within the sound discretion of the trial court. *Jones v. State*, 655 N.E.2d 49, 56 (Ind.1995).

The record reveals that Police Detective Sellars advised Elsten of his rights and asked if he understood them. He answered affirmatively and signed the waiver. Sellars then proceeded with the interrogation. At no time between his first request for counsel and his signing of the waiver was he coerced or forced to talk. These facts suggest a voluntary statement to police. The trial court appropriately admitted the redacted tape.

## II. Request for Change of Venue

■ Elsten claims the trial court erred by denying his motion for change of venue. He alleges that publicity surrounding the case was so prejudicial as to deny him a fair trial. Although the court failed to rule on this motion, it conducted individual voir dire of the prospective jurors. For our purposes, we will deem the motion denied.

■ A trial court's denial of a change of venue motion will be reversed only for an abuse of discretion. *Davidson v. State*, 580 N.E.2d 238, 244 (Ind.1991) (citing *Linder v. State*, 456 N.E.2d 400 (Ind.1983)). Showing potential juror exposure to press coverage is not enough. *Barnes v. State*, 693 N.E.2d 520, 524 (Ind.1998) (citing Ind.Code Ann. § 35-37-1-5(b) (West 1993)). Instead, the defendant must demonstrate that the jurors were unable to disregard preconceived notions of guilt and render a verdict based on the evidence. *Id.* at 524–25. An abuse of discretion does not occur where voir dire reveals that the seated panel was able to set aside preconceived notions of guilt and render a verdict based solely on the evidence. *Lindsey v. State*, 485 N.E.2d 102, 106 (Ind. 1985).

During the individual voir dire of the potential jurors in this case, each was asked about exposure to pretrial publicity and whether each could serve fairly and impartially. After five potential jurors indicated that they could not, the trial court dismissed them for cause upon defense counsel's request. All of the impaneled jurors, however, answered that they could function impartially to render a verdict based solely upon the evidence presented. Because Elsten has not shown any other evidence of prejudice arising form publicity, we conclude that his right to a fair trial was not denied by conducting the trial in Madison County.

## III. Evidence Seized from Vehicle Search

■ Next, Elsten claims the court improperly admitted evidence seized illegally from a vehicle he drove on the day of the shooting. The vehicle belonged to his mother, who voluntarily consented to a search after the vehicle was impounded by police. Although the consent form stated that the search would occur on January 15, 1996, police did not conduct the search until January 18, 1996. Elsten says the three-day delay exceeded the scope of his mother's consent, and thus, was an illegal search and seizure. *See, e.g., United States v. Dichiarinte*, 445 F.2d 126, 129–30 (7th Cir.1971) (consent to search for narcotics does not include a search through personal papers).

As a threshold matter, Elsten must have standing to raise the constitutionality of the search and seizure—that is, a reasonable expectation of privacy in the property being searched. *Brown v. State*, 691 N.E.2d 438, 443 (Ind.1998). He contends, citing *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990), that such an expectation exists because he was a permissive user of the vehicle. Although it is unclear whether the facts of this case support that assertion, the State does not contest the issue. Therefore, we will assume that Elsten has standing to raise this claim.

Nonetheless, this assumption reflects the difficult nature of Elsten's contention. Plain-

---

**3.** The record indicates that after Elsten's initial request for an attorney, the officer continued to interrogate him for approximately five more min- utes. The questions focused generally on his whereabouts at the time of the shooting (R. at 870.)

ly, as he points out, there are some cases in which temporal limits on a defendant's consent must be honored because a late search can affect his rights. *See, e.g., State v. Brochu,* 237 A.2d 418, 421 (Me.1967) (defendant gave consent as a victim, but police conducted search after he became the accused).

Likewise, our courts have found unreasonable searches where the search warrant was stale, *see Ashley v. State,* 251 Ind. 359, 367–68, 241 N.E.2d 264, 269 (1968) (search warrant for small amounts of marihuana becomes stale after eight days because of its transitory nature as a commodity), or where police exceeded space limitations of defendant's consent, *see Covelli v. State,* 579 N.E.2d 466, 472–73 (Ind.Ct.App.1991) (search of handbag continued after police found the object of their search; thus, search exceeded scope of the consent); *Deckard v. State,* 425 N.E.2d 256, 257 (Ind.Ct.App.1981) (consent to search for narcotics does not extend to search for a knife). *Cf. Williams v. State,* 426 N.E.2d 662, 667 (Ind.1981) (burned belongings of a victim are not likely to be moved; therefore, an affidavit supporting the warrant was not stale after sixty days).

These cases do not seem to compel the conclusion that Elsten's rights were violated. Here, the vehicle seized and searched was not the defendant's property, nor has he shown a right to exercise control over it. Further, there is no evidence that the delay affected his mother's rights or her consent to search. Indeed, even if we assumed that his mother's rights were violated, there is no apparent prejudice that flowed to him as a result of this delay. We find no deprivation of Elsten's Fourth Amendment rights.

### IV. Refusal to Accept Plea of Guilty

■ Finally, Elsten maintains that the trial court erred by refusing to accept his plea of guilty but mentally ill during the trial. The State counters that an insufficient factual basis existed for the plea because there was no evidence of mental illness. We agree with the State.

■ For a trial court to accept a plea of guilty but mentally ill, a sufficient factual basis must exist for the decision. *Rhoades v. State,* 675 N.E.2d 698, 700 (Ind.1996) (citing Ind.Code Ann. § 35–35–1–3 (West 1993)). On appeal, we presume that the court's decision was correct and review only for an abuse of discretion. *Coomer v. State,* 652 N.E.2d 60, 62 (Ind.1995).

After Elsten asked to plead guilty but mentally ill, the trial court conducted a hearing to determine whether a sufficient factual basis existed for the plea. The court had three reports from clinical psychologists, two of which stated Elsten was not suffering from psychological disorders.[4] Upon reviewing the evidence and testimony, it concluded that the record was not sufficient for him to accept the plea. This was not an abuse of the court's discretion.

Moreover, had the trial court permitted Elsten to plead guilty, he would have stood in the same place he stood after the jury rendered its verdict—convicted of murder and eligible to argue mitigating circumstances like mental impairment to the sentencing judge. *See Douglas v. State,* 663 N.E.2d 1153, 1156 (Ind.1996).

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.

---

4. In total, three psychological evaluations were conducted on the defendant. The two court-ordered evaluations both stated that Elsten was not suffering from any mental disorders at the time of the shooting. (R. at 201, 208.) Another report, commissioned by the defendant, stated that he could have been suffering form some mental disorders at the time of the shooting. (R. at 1104–05.)