Norman J. JOHNSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 11S00–9904–CR–244.

Supreme Court of Indiana.

May 24, 2001.

Dennis R. Majewski, Terre Haute, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

## Case Summary

A jury convicted Norman Johnson of multiple offenses for his role in the shooting death of Norman Miller. The trial court sentenced Johnson to a total term of 176 years. In this direct appeal we address the following rephrased issues: (1) did the trial court err in denying Johnson's motions for change of venue and mistrial based on pre-trial publicity and publicity occurring during the course of trial; (2) did the trial court err in refusing to sequester the jury; and (3) do any of Johnson's convictions violate the Double Jeopardy Clause of the Indiana Constitution. Johnson does not challenge his conviction for murder. Thus, it is summarily affirmed. We also affirm Johnson's conviction for robbery. Finding a double jeopardy violation, we reduce from a Class A felony to a Class B felony Johnson's conviction for burglary and vacate his conviction for conspiracy to commit burglary. On statutory grounds we also vacate Johnson's conviction for auto theft. In all other respects the judgment of the trial court is affirmed. This cause is remanded for re-sentencing.

### Facts

The facts most favorable to the verdict show that in the early morning hours of June 16, 1998, Johnson and two accomplices entered the home of Norman Miller. The men beat Miller and shot him five times resulting in his death. Johnson and his accomplices took guns, cash, credit cards, a motorcycle, and other personal items from Miller's home.

The State charged Johnson with Count I—murder, Count II—felony murder as a Class A felony, Count III—robbery as a Class C felony, Count IV—conspiracy to commit robbery as a Class C felony, Count V—burglary as a Class A felony, Count VI—conspiracy to commit burglary as a Class A felony, Count VII—auto theft as a Class D felony, and Count VIII—theft as a Class D felony. The State also initially sought to sentence Johnson to life without parole but withdrew the charge prior to sentencing. A jury convicted Johnson on all counts. At the sentencing hearing, the trial court imposed no sentence on Johnson's convictions for felony murder, conspiracy to commit robbery, and theft. Instead, the trial court sentenced Johnson to enhanced terms of sixty-five years for murder, eight years for robbery, fifty years for burglary, fifty years for conspiracy to commit burglary, and three years for auto theft. The trial court ordered the sentences to run consecutively for a total executed term of 176 years imprisonment. This appeal followed. Additional facts are recited below where relevant.

### Discussion

#### I. Change of venue and mistrial

Prior to trial, Johnson moved for a change of venue from Clay County based on the amount of pre-trial publicity. The trial court denied the motion. During the course of trial, citing ongoing media coverage, Johnson renewed his change of venue motion and also moved for mistrial. Both motions were denied. Johnson claims error.

■ A trial court's denial of a change of venue motion will be reversed only for an abuse of discretion. *Elsten v. State*, 698 N.E.2d 292, 294 (Ind.1998). Showing potential juror exposure to press coverage is not enough. *Id.* Instead, the defendant must demonstrate that the jurors were unable to disregard preconceived notions of guilt and render a verdict based on the evidence. *Id.* An abuse of discretion does not occur where voir dire reveals that the seated panel was able to set aside preconceived notions of guilt and render a verdict based solely on the evidence. *Id.* The record here shows that during voir dire, each juror who had been exposed to some amount of pre-trial publicity said that he or she could remain impartial. R. at 1189–1216. Johnson has made no showing to the contrary and thus has failed to demonstrate that the jury was unable to render a verdict based upon the evidence. The trial court did not abuse its discretion in denying Johnson's motion for change of venue.

■ As for Johnson's claim that the trial court erred in denying his motion for mistrial, we note that a mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Warren v. State*, 725 N.E.2d 828, 833 (Ind.2000). The premise underlying a motion for mistrial presupposes that an error of some type occurred in the first instance. *Id.* Here, there was no error. During the course of trial the trial court repeatedly admonished the jurors not to allow themselves to be exposed to media coverage, R. at 624–25, 830, 948, 1034, 1140, and polled the jurors throughout the trial to see if they had been exposed to media coverage. R. at 456, 628, 830–31, 999, 1034, 1147. The jurors

responded each time that they had not. We find no error here.

## II. Jury sequestration

■ Along with his pre-trial motion for change of venue, Johnson also filed a motion to sequester the jury. The trial court denied the motion, and Johnson claims error. He correctly points out that in cases where the State is seeking the death penalty, the trial court must sequester the jury if the defendant requests it. *Holmes v. State*, 671 N.E.2d 841, 854 (Ind. 1996); *Baird v. State*, 604 N.E.2d 1170, 1186 (Ind.1992); *Lowery v. State*, 434 N.E.2d 868, 870 (Ind.1982). According to Johnson, the same considerations underlying jury sequestration in capital cases are equally applicable here where the State is seeking a sentence of life without parole.

■ It is true that a sentence of life without parole is subject to the same statutory standards and requirements as the death penalty. *Pope v. State*, 737 N.E.2d 374, 382 (Ind.2000), *reh'g denied; Ajabu v. State*, 693 N.E.2d 921, 936 (Ind.1998). However, there is no statutory requirement for sequestration of a jury in a capital case. Rather, with respect to any case tried to a jury "the jurors may separate when court is adjourned for the day, unless the court finds that the jurors should be sequestered in order to assure a fair trial." Ind.Code § 35–37–2–4(b).

■ The rule requiring a trial court to grant a defense request for jury sequestration in capital cases represents a policy decision that acknowledges the extreme finality of the death penalty. Although some may regard the punishment of life imprisonment without the hope of release as equally severe as the death penalty,[1] the fact remains that these two sentences are qualitatively different. It is this difference that compels a conclusion that sequestration is a mandatory requirement upon request in capital cases. However, in non-capital cases jury sequestration is a matter left to the discretion of the trial court. *Clemens v. State*, 610 N.E.2d 236, 241 (Ind.1993). As this Court has observed, "[N]o case has presented itself in which a defendant has been ordered put to death by an American court as punishment for crime upon the verdict of a jury which was permitted to separate and return to commingle in the general community during trial, over the timely objection of the accused." *Lowery*, 434 N.E.2d at 870 (finding reversible error in a capital case where the trial court denied the defendant's motion to sequester the jury during trial). Although the burden a jury faces in determining whether to recommend a life sentence is indeed great, we do not believe that the decision to sequester the jury in such cases should be removed from the trial court's discretion. We find no abuse of discretion here.

## III. Double jeopardy

### A. Murder and Burglary

■ Johnson contends that his convictions and sentencing for murder and burglary as a Class A felony violate Indiana's double jeopardy clause. The

---

1. *See, e.g., Smith v. State*, 686 N.E.2d 1264, 1273 (Ind.1997) (affirming the defendant's plea agreement that called for the death penalty as opposed to life without parole and observing, " 'When a person is doomed to spend his final years imprisoned, with no (or few) prospects of release, then in terms of his human dignity, his individuality, his freedom, and his autonomy, one could well argue that the oppressive confines of a prison constitute as great an infringement of his basic human rights as a death sentence.' ") (quoting *California v. Bloom*, 48 Cal.3d 1194, 259 Cal.Rptr. 669, 774 P.2d 698, 715 n. 7 (1989)) (internal quotations omitted).

double jeopardy rule prohibits multiple punishments for the same offense. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), this Court developed a two-part test for determining whether two convictions are permissible under Indiana's double jeopardy clause. *Id.* at 49. A double jeopardy violation occurs when " 'the State . . . proceed[s] against a person twice for the same criminal transgression.' " *Hampton v. State*, 719 N.E.2d 803, 809 (Ind.1999) (quoting *Richardson*, 717 N.E.2d at 49). Under *Richardson*, "two or more offenses are the 'same offense' . . . if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49. When we look to the actual evidence presented at trial, we will reverse one of the convictions if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

 In this case, the record is clear that the same evidence that supported Johnson's murder conviction was also used to elevate Johnson's burglary conviction to a Class A felony. Burglary is a Class A felony if it results in serious bodily injury. The serious bodily injury alleged and proven by the State in this case was Miller's death, the same facts used to convict Johnson of murder. Thus, under *Richardson*, Johnson's conviction of Class A burglary cannot stand.

 However, this does not entitle Johnson to escape punishment for the burglary of which he was convicted. When two convictions are found to contravene double jeopardy principles, we may remedy the violation by reducing either convic-

tion to a less serious form of the offense if doing so will eliminate the violation. *Id.* at 54. The burglary statute provides:

> A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a *Class B felony* if it is committed while armed with a deadly weapon or *if the building or structure is a dwelling*, and a Class A felony if it results in either bodily injury or serious bodily injury to any person other than a defendant.

I.C. § 35-43-2-1 (1998) (emphasis added). Here, the evidence presented at trial showed that Johnson broke and entered Miller's home—a dwelling. Thus, we reduce Johnson's burglary conviction to a Class B felony.

## B. Burglary and Conspiracy to Commit Burglary

 We next address whether Johnson's convictions for burglary and conspiracy to commit burglary also violate Indiana's double jeopardy clause. That is, we examine whether it is reasonably possible that the same evidence was used to support both Johnson's burglary conviction and Johnson's conviction for conspiracy to commit burglary. We first observe that a defendant may be convicted of both conspiracy to commit a felony and commission of the underlying felony. *See Griffin v. State*, 717 N.E.2d 73, 89 (Ind.1999), *cert. denied*, 530 U.S. 1247, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000). A double jeopardy violation occurs where the same evidence used to prove the overt act committed in furtherance of the conspiracy also proves the commission of the underlying crime. *See Turnley v. State*, 725 N.E.2d 87, 91 (Ind.2000); *Griffin*, 717 N.E.2d at 89.

 The case before us is somewhat unusual because the information charging

Johnson with conspiracy to commit burglary mentions no overt acts.[2] In like fashion, the final jury instructions are silent on what overt acts the State was required to prove in order to obtain a guilty verdict for conspiracy to commit burglary. Nonetheless, we may examine the record to determine the facts upon which the State relied to support its charge of conspiracy. *See McIntire v. State*, 717 N.E.2d 96, 100 (Ind. 1999) (observing that the evidentiary facts used by the jury in reaching its decision may be informed by considerations of the final jury instructions and arguments of counsel); *see also Parker v. State*, 660 N.E.2d 1025, 1031 (Ind.Ct.App.1995) (finding that the record showed the State proved several overt acts to support its claim of conspiracy apart from the underlying felony even though the jury was not instructed as to a particular overt act). The record shows that in final summation the prosecutor advanced the argument that the State had proven that either Johnson or his co-conspirators had engaged in several overt acts, including: obtaining a weapon, entering the crime scene [Miller's home], and stealing items from Miller's home. R. at 1373. In addition, both charged offenses included the same intent to commit a felony of theft, robbery, or battery resulting in serious injury. Thus, the evidence proving conspiracy to commit

burglary in this case also established the essential elements of Class B burglary as now reduced. Applying the *Richardson* test, we conclude there was a reasonable possibility that the jury used the same evidentiary fact to prove the essential elements of both the conspiracy to commit burglary charge and the burglary charge as a Class B felony. Accordingly, we must vacate Johnson's conviction for conspiracy to commit burglary.

### C. Auto Theft and Robbery

 For his last double jeopardy claim, Johnson contends that he was improperly convicted and sentenced for auto theft. More particularly, Johnson argues that auto theft is a lesser included offense of robbery, and thus the auto theft conviction must be vacated. We need not decide this issue on Indiana constitutional grounds because Indiana Code section 35–38–1–6 specifically addresses this concern by prohibiting judgment and sentence for both a greater and a lesser included offense.[3] Theft is an inherently included lesser offense of robbery. One cannot commit robbery without also committing theft. *Brown v. State*, 650 N.E.2d 304, 305 (Ind.1995); *Clemmons v. State*, 538 N.E.2d 1389, 1389 (Ind.1989).

---

**2.** In relevant part, the information alleges that Johnson did:

[C]onspire with James J. Barrett and Matthew L. Hutchinson to break and enter the dwelling of Norman Dan Miller, to-wit: residence [ ] with the intent to commit a felony therein, to-wit: theft, robbery, battery resulting in serious bodily injury [ ] and the death of Norman Dan Miller, and also performed an overt act in furtherance of the agreement.

R. at 48. The information is thus defective because the State is required to "allege and prove" that either the defendant or the person with whom the defendant agreed "performed an overt act in furtherance of the agreement."

I.C. § 35–41–5–2(b). However, a challenge to a defective charging information must be made within twenty days of the omnibus date, and failure to do so results in waiver of the issue on appeal. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994); I.C. § 35–34–1–4(a).

**3.** The statute provides, "Whenever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." I.C. § 35–38–1–6.

The State counters that in this case, auto theft is not a lesser included offense of robbery because the taking of different property supports each offense. In support, the State points out that the charging information for robbery alleged alternatively that Johnson took from Miller "a 1997 Harley Davidson motorcycle, cash and/or drugs," R. at 47, while the auto theft charge involved only the motorcycle. Under the "single larceny rule," Johnson's conviction for auto theft cannot stand. The rule provides:

> [W]hen several articles of property are taken from the same person at the same time, from the same place, there is but a single larceny for which there may be but one judgment and one sentence. This rationale extends to theft as an included offense; where both cash and an automobile were taken during an armed robbery, the State could not split up a single offense to make distinct parts the basis for multiple prosecutions.

*Tingle v. State*, 632 N.E.2d 345, 350 (Ind. 1994) (citation omitted). We conclude that the same material elements of auto theft were included in the elements of robbery. Pursuant to Indiana Code section 35–38–1–6, Johnson's auto theft conviction also must be vacated.

In a related argument, Johnson also complains the trial court erred in ordering his sentences to run consecutively because, "Theft, Auto Theft and Robbery as a Class C felony are not crimes of violence for purposes of consecutive sentencing as set out in Indiana Code § 35–50–1–2."[4] Br. of Appellant at 11. The trial court did not sentence Johnson for theft, and we have vacated his conviction for auto theft. Thus, those two convictions are not a part of the calculus. As for robbery, it is true that the statute does not identify Class C felony robbery as a "crime of violence." I.C. § 35–50–1–2 (defining the term to include, among other things, robbery as a Class A felony or a Class B felony). However, the limitations the statute imposes on consecutive sentencing do not apply between crimes of violence and those that are not crimes of violence. *See Williams v. State*, 741 N.E.2d 1209, 1214 (Ind.2001); *Ellis v. State*, 736 N.E.2d 731, 737 (Ind.2000). Accordingly, the trial court did not err by ordering Johnson's sentence for robbery as a Class C felony to run consecutive to the murder and burglary as a Class B felony, both of which are defined as "crimes of violence." I.C. § 35–50–1–2(a)(1), (11).

### Conclusion

We vacate Johnson's convictions for conspiracy to commit burglary and auto theft, and we reduce Johnson's conviction for burglary as a Class A felony to burglary as a Class B felony. In all other respects, the judgment of the trial court is affirmed. This cause is remanded for resentencing.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

4. The statute provides in relevant part:

"The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, *except for crimes of violence*, the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted."

I.C. § 35–50–1–2(c) (emphasis added).