**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**HENRY LEWIS**
Indiana State Prison
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 28 2014, 9:29 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HENRY LEWIS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1307-PC-342 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-0503-PC-50918

July 28, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Henry Lewis appeals the denial of his petition for postconviction relief ("PCR"), in which he argued that he received ineffective assistance of trial and appellate counsel. Concluding that Lewis has failed to carry his burden to show that the postconviction court's decision is contrary to law, we affirm.

## Facts and Procedural History

We summarized the facts underlying Lewis's convictions in our opinion on direct appeal:

> Marvin Engelking lived in an apartment located inside a commercial building on East 10th Street in Indianapolis, Indiana. He worked for the building's owner, Victor Demichieli, who operated a business out of the building. The back of the building contained a storage area, which was enclosed by a six-foot-high chain link fence topped with barbed wire, where trucks and other equipment were stored. The gate to the fence was secured by a padlock and chain.

> On March 2, 2005, at approximately 9:30 a.m., Engelking returned to the building and discovered the gate to the fence had been "busted open." As soon as Engelking entered the property, he heard the metal door to the building slam shut. Engelking noticed that a window to the building had been broken. He [] ran to the back of the property and saw a man, later identified as Lewis, crawling under a section of fence that had been pried up from the ground. Lewis was dressed in green coveralls and was wearing jersey work gloves. As Lewis stood up, Engelking noticed that he had a bucket of tools and a chainsaw that belonged to Demichieli. Engelking recognized his DeWalt hammer drill on top of the bucket.

> Engelking ran after Lewis and followed him down an alley. Because Lewis did not know that he was being followed, Engelking was able to catch up to him and tap him on the shoulder. Engelking told Lewis that he had Engelking's tools, to which Lewis responded that the tools in his possession were not Engelking's. Engelking told Lewis that he had observed Lewis crawling underneath the fence with the tools. Lewis put down the tools and began fidgeting in his pocket as though he had a gun or knife. He then

2

punched Engelking in the face "pretty hard." Lewis swung the chainsaw at Engelking, but Engelking was able to step out of the way. Lewis grabbed a circular saw from the bucket and ran off with both it and the chainsaw. Engelking pursued Lewis, and while doing so, he saw a utility van and asked the driver to call the police. Engelking continued his pursuit and observed Lewis place the two saws into a dumpster. Engelking used his two-way radio to call Demichieli and inform him of the robbery and the location of the saws. Shortly thereafter, the police arrived, and Engelking indicated the direction in which the robber had run.

Indianapolis Police Officer Mark Rand, who arrived to participate in the chase, observed Lewis walk toward another marked police car traveling in his direction and then turn and run away. Because Officer Rand was in a car without overhead lights, he waited until Lewis was within twenty feet of his car before he exited and identified himself as a police officer. Officer Rand asked Lewis to stop so he could talk to him. Lewis immediately turned and ran between two houses. Officer Rand retrieved his police service dog from his police car and began tracking Lewis. They were able to track Lewis to an abandoned house, but the dog lost the scent.

A few days later, Engelking identified Lewis from a photo array as the person who had hit him and taken the items from him and Demichieli. Officer Rand also identified Lewis from a photo array as the person who had run away from him on the day of the crime. The State charged Lewis with burglary as a Class B felony, burglary as a Class C felony, robbery as a Class B felony, criminal recklessness as a Class D felony, and theft as a Class D felony. The State also alleged that Lewis was a habitual offender.

*Lewis v. State*, 898 N.E.2d 429, 431-32 (Ind. Ct. App. 2008) (citations omitted), *trans. denied* (2009) ("*Lewis II*").

Lewis's first trial ended in a hung jury. At his second trial, the jury found Lewis not guilty of theft but otherwise guilty as charged. He appealed. We reversed Lewis's convictions because we concluded that the trial court erred in allowing the State to reopen its case during closing arguments to present additional evidence. *Lewis v. State*, No. 49A02-0610-CR-921, slip op. at 2-4 (Ind. Ct. App. Apr. 24, 2007), *trans. denied* ("*Lewis I*").

3

A third trial was held. Even though Lewis had been acquitted of the theft count in the second trial, the State presented that count to the jury. The jury found Lewis guilty as charged. Lewis pled guilty to being a habitual offender. At sentencing, the trial court recognized that Lewis had been previously acquitted of the theft charge and dismissed it. The trial court merged the class C felony burglary count with the class B felony burglary count and the criminal recklessness count with the class B felony robbery count. The trial court sentenced Lewis for his convictions of class B felony burglary and class B felony robbery and for being a habitual offender to an aggregate term of forty-five years.

Lewis appealed his convictions. He asserted that the trial court abused its discretion in admitting identification evidence consisting of photo arrays and in refusing to give his tendered jury instructions regarding eyewitness credibility and that the evidence was insufficient to establish the bodily injury element necessary for the enhancement of his robbery conviction to a class B felony. We affirmed. *Lewis II*, 898 N.E.2d at 435.

Lewis filed a PCR petition, arguing that he received ineffective assistance of trial and appellate counsel. Following a hearing, the postconviction court issued an order ("PCR Order") denying his petition.[1] Lewis appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

**Standard of Review**

Lewis, pro se, appeals the denial of his PCR petition.

---

[1] Lewis has not included a copy of the PCR Order in his appellant's appendix as required by Indiana Appellate Rule 50(A)(2)(b). Therefore, we will cite to the copy of the PCR Order at the back of his appellant's brief.

Post-conviction proceedings provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence. We review factual findings of a post-conviction court under a clearly erroneous standard but do not defer to any legal conclusions. We will not reweigh the evidence or judge the credibility of the witnesses and will examine only the probative evidence and reasonable inferences therefrom that support the decision of the post-conviction court. Additionally, the PCR court here entered findings of fact and conclusions [of law], as required by Indiana Post-Conviction Rule 1(6). We cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support the judgment.

*Woodson v. State*, 961 N.E.2d 1035, 1040-41 (Ind. Ct. App. 2012) (citations and quotation marks omitted), *trans. denied*.

A petitioner who has been denied post-conviction relief … appeals from a negative judgment. … When a petitioner appeals from a negative judgment, he or she must convince the appeals court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. Stated slightly differently, this Court will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion.

*Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001) (citations and quotation marks omitted).

Although Lewis is "proceeding pro se and lacks legal training, such litigants are held to the same standard as trained counsel and are required to follow procedural rules." *Ross v. State*, 877 N.E.2d 829, 833 (Ind. Ct. App. 2007), *trans. denied* (2008).

Lewis contends that he is entitled to postconviction relief because he was denied effective assistance of trial and appellate counsel. "The Sixth Amendment to the United States Constitution guarantees the defendant the right to effective assistance of counsel." *Latta v. State*, 743 N.E.2d 1121, 1125 (Ind. 2001) (citing *Strickland v. Washington*, 466 U.S.

5

668, 686 (1984)). "'The purpose of the effective assistance guarantee of the Sixth Amendment is simply to ensure that criminal defendants receive a fair trial.'" *Wilkes v. State*, 984 N.E.2d 1236, 1245 (Ind. 2013) (quoting *Strickland*, 466 U.S. at 689).

To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) (citing *Strickland*, 466 U.S. at 687). To establish deficient performance, a petitioner must demonstrate that counsel's representation "'fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment.'" *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007) (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). In assessing whether counsel's performance was deficient, we observe that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Latta*, 743 N.E.2d at 1125. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

6

**Section 1 – Ineffective Assistance of Trial Counsel**

**Section 1.1 – Failure to Move to Dismiss Theft Charge**

Lewis argues that trial counsel was ineffective in failing to move to dismiss the theft charge because he had been acquitted of that charge in his second trial. Lewis does not challenge the postconviction court's conclusion that even though trial counsel's failure to object to the theft charge constituted deficient performance, Lewis had not suffered prejudice because the trial court did not enter judgment of conviction or impose sentence on the theft charge. PCR Order at 13. Rather, Lewis argues that the theft charge was the underlying offense of the burglary and robbery charges, and therefore he would not have been convicted of burglary and robbery without the theft charge and the evidence pertaining thereto. According to Lewis, the principle of collateral estoppel barred the relitigation of the theft charge as part of the burglary and robbery charges. The postconviction court rejected Lewis's collateral estoppel argument and concluded that it was not necessary for the State to use the facts related to the theft charge in the third trial. *Id*. at 16.

The double jeopardy rule prohibits multiple punishments for the same offense. *Johnson v. State*, 749 N.E.2d 1103, 1107-08 (Ind. 2001). "Collateral estoppel [also referred to as issue preclusion] is not the same as double jeopardy, but rather it is embodied within the protection against double jeopardy." *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011).

> The traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime. In essence the doctrine of collateral estoppel precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial. To decipher what a jury necessarily decided in a prior trial, courts

7

should examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

*Id.* (citations and quotation marks omitted). "[C]ollateral estoppel 'will not often be available to a criminal defendant,' for 'it is not often possible to determine with precision how the judge or jury has decided any particular issue.'" *Hoover v. State*, 918 N.E.2d 724, 734 (Ind. Ct. App. 2009) (quoting 5 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 17.4(a) (3d ed. 2007)), *trans. denied* (2010).

We begin by reviewing the statutory definitions of the offenses charged and the charging information. Theft is the exertion of unauthorized control over property of another person with intent to deprive the other person of its value or use. Ind. Code § 35-43-4-2. Burglary is the breaking and entering of a building or structure with the intent to commit a felony in it. Ind. Code § 35-43-2-1. Robbery is the taking of property from another person by using or threatening the use of force or by putting any person in fear. Ind. Code § 35-42-5-1. "Theft is an inherently included lesser offense of robbery. One cannot commit robbery without also committing theft." *Johnson v. State*, 749 N.E.2d 1103, 1109 (Ind. 2001). Thus, it is true that theft may be the underlying felony of a burglary and is a lesser included offense of robbery. However, the charging information, which Lewis completely ignores, shows that the theft of which he was acquitted was not the theft underlying the burglary and robbery charges.

8

The State charged Lewis with class B felony burglary as follows:

> Henry Lewis, on or about March 2, 2005, did break and enter the building or structure, and dwelling of Marvin Engelking, situated at 2921 ½ East 10th Street, with intent to commit the felony of Theft therein; that is, with intent to knowingly exert unauthorized control *over the property of Marvin Engelking* and/or Victor DeMichieli, *with intent to deprive Marvin Engelking* and/or Victor DeMichieli of any part of its value or use.

Direct Appeal App. at 48 (emphases added). The class B felony robbery charge read as follows:

> Henry Lewis, on or about March 2, 2005, did knowingly *take from the person or presence of Marvin Engelking property, that is: tools*, by putting Marvin Engelking in fear or by using or threatening the use of force on Marvin Engelking which resulted in bodily injury, that is: physical pain, to Marvin Engelking.

*Id*. at 49 (emphasis added). The class D felony theft charge read as follows:

> Henry Lewis, on or about March 2, 2005, did knowingly exert unauthorized control of the property, that is: tools and a tiller, *of another person, namely: Victor DeMichieli, with intent to deprive Victor DeMichieli* of any part of the value or use of said property.

*Id*. (emphasis added).

Therefore, in the second trial, the jury acquitted Lewis of exerting unauthorized control over *DeMichieli's* property. The burglary and robbery charges, of which the jury found Lewis guilty, were not based solely on DeMichieli's property but also on Engelking's property. Therefore, in the third trial, the jury did not need to reconsider the issue of whether

9

Lewis exerted unauthorized control over DeMichieli's property. Accordingly, Lewis has failed to carry his burden to show that the postconviction court's decision is contrary to law.[2]

### Section 1.2 – Failure to Object to Engelking's Testimony

Lewis asserts that trial counsel was ineffective for failing "to object to the changed testimony of Engelking." Appellant's Br. at 11. "In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure." *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied* (2002). Without citation to the record, Lewis avers that at the first trial Engelking testified only that he saw a man standing outside the back fence. Lewis states that at the second trial, the prosecutor asked Engelking if he saw Lewis crawling under the fence, and that trial counsel "failed to object to [this] leading question." *Id*. at 7. Lewis then states that at the third trial, "Engelking again testified that he saw Lewis crawling under the fence into the alley." *Id*. at 8. Other than arguing that Engelking's testimony had changed, Lewis fails to provide a cogent argument or citation to the Indiana Rules of Evidence as a basis for an objection to Engelking's testimony at the third trial. Accordingly, his argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that argument be supported by cogent reasoning with citations to authority); *Cooper v. State*, 854 N.E.2d 831, 835 n.1 (Ind. 2006).

---

[2] Lewis also appears to argue that the State needed the theft charge in order to offer the evidence that Engelking saw Lewis leave the property by crawling under the back fence. He fails to cite any of the Indiana Evidence Rules or any other authority for such a proposition, and therefore his argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that argument be supported by cogent reasoning with citations to authority); *Cooper v. State*, 854 N.E.2d 831, 835 n.1 (Ind. 2006).

## Section 1.3 – Failure to Consult with Lewis

Lewis contends that trial counsel failed to consult with him during pretrial, and

> [a]s a result, counsel failed to properly object when the prosecutor injected into Engelking's testimony the mere allegation that Engelking had seen Lewis crawling under the fence, and then failed to properly object with supporting case law when Engelking misidentified Lewis, after several attempts to identify the perpetrator, as the man who he had confronted in the alley.

Appellant's Br. at 13. The PCR court found that trial counsel "met with Lewis numerous times at the jail prior to trial and discussed the trial strategy with Lewis." PCR Order at 5. The PCR court further concluded that Lewis presented no evidence to support this claim. *Id.* at 11. Our review of the record shows that at the PCR hearing, trial counsel testified that he remembered meeting with Lewis "many times at the jail," recalled "a lot of discussions about [their] strategy," and believed that he communicated to Lewis "what [their] strategy at trial was going to be." PCR Tr. at 50. Lewis did not testify at the PCR hearing, and thus his counsel's testimony is uncontradicted. We conclude that Lewis has failed to carry his burden to show that the PCR court's decision is contrary to law.

## Section 1.4 – Failure to Object to Identification Evidence

Lewis argues that trial counsel's "failure to seek suppression of evidence regarding out-of-court identification procedures, or to contemporaneously object to evidence about the out-of-court procedures or the in-court identification was ineffective assistance." Appellant's Br. at 14. The postconviction court concluded that trial counsel objected to the admission of three separate photo arrays on a variety of grounds, which were overruled by the trial court, but that he was successful in preventing an in-court identification of Lewis by a law

enforcement witness. However, Lewis contends that trial counsel should have objected to the photo array shown to Engelking on the basis that it contained only six men and that he had already been informed that the perpetrator had been arrested. We are unpersuaded that an objection to the photo array on the basis now advanced would have been sustained. *See Gambill v. State*, 436 N.E.2d 301, 303 (Ind. 1983) ("It is inevitable that a witness may know that the police have a suspect when he is asked to view a 'line up' or limited photographic array.").

Lewis also argues that "the in-court identification of [him] lacked sufficient independent reliability" to be admissible. Appellant's Br. at 15. Although Lewis does not specify the in-court identification to which he is referring or provide any citations to the record, we can infer from the PCR Order that Lewis is referring to Engelking's in-court identification of Lewis. The record shows that during the commission of the offenses, Engelking was close enough to Lewis to tap him on the shoulder and carry on a conversation. Trial Tr. at 68, 70, 73-75. Accordingly, we are unpersuaded that Engelking's in-court identification of Lewis lacked sufficient independent reliability.

## Section 1.5 – Failure to Tender Instructions

Lewis asserts that trial counsel failed to tender any instruction on eyewitness identification, and thus provided ineffective assistance. Lewis is incorrect. *See Lewis II*, 898 N.E.2d at 433 (concluding that trial court did not abuse its discretion when it refused to give either one of trial counsel's tendered jury instruction regarding eyewitness credibility). Therefore, this claim is meritless.

12

**Section 1.6 – Failure to Challenge Elevation of Robbery to a Class B felony**

Lewis contends that trial counsel was ineffective for failing to object to the trial court's elevation of the robbery charge to a class B felony on the ground that the State failed to produce any evidence that Engelking had suffered any physical impairment. The element of bodily injury elevates class C felony robbery to a class B felony. Ind. Code § 35-42-5-1. "Bodily injury" is defined as "any impairment of physical condition, including physical pain." Ind. Code § 35-41-1-4. As the State observes, this Court addressed the sufficiency of the evidence for bodily injury on direct appeal, and we concluded that Engelking's testimony that he was "punched" in the face "pretty hard" and that "it didn't feel good" was sufficient evidence that he had suffered bodily injury. *Id*. at 435-36; *see also Lewis v. State*, 438 N.E.2d 289, 294 (Ind. 1982) (concluding that physical pain suffered by victim was sufficient to establish bodily injury). Thus, Lewis's argument fails.

**Section 2 – Ineffective Assistance of Appellate Counsel**

Lastly, Lewis asserts that his appellate counsel provided ineffective assistance by failing to argue that there was insufficient evidence of physical impairment to establish the bodily injury element of class B felony robbery. This argument is unavailing for the same reason as the previous argument. Therefore, we affirm the denial of Lewis's PCR petition.

Affirmed.

BAKER, J., and BARNES, J., concur.