**Clarence T. Hawkins JAMES,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A05–1101–CR–61.**

Court of Appeals of Indiana.

Sept. 6, 2011.

Elizabeth A. Bellin, Cohen Law Offices, Elkhart, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Clarence T. Hawkins James ("James") was convicted in Elkhart Circuit Court of Class B felony conspiracy to commit armed robbery, Class B felony burglary, and Class C felony robbery while armed with a deadly weapon. James appeals and presents two issues for our review, which we restate as: (1) whether his convictions for conspiracy to commit robbery and robbery constitute double jeopardy, and (2)

whether the trial court erred in instructing the jury.

We affirm.

## Facts and Procedural History

The underlying facts of this case appear to be relatively undisputed. On August 10, 2009, Tony Parish ("Parish"), Christopher Tate ("Tate"), Tommy Gary ("Gary"), and James were all at Tate's home, where they discussed robbing a nearby liquor store. In preparation for this planned robbery, Parish was armed with a .38 caliber handgun, and James took a knife from Tate's home. Inside the car, the men "masked up," meaning that they pulled their shirts up over their faces so that only their eyes were visible. Gary drove the men to the nearby liquor store but did not stop there because he "just wasn't feeling it." Tr. p. 226. The planned robbery of the liquor store never happened.

Gary then drove around for a few minutes and passed a brown house. Parish told his companions that they could obtain money, marijuana, and a gun from that house and told Gary to stop the car. Parish then told Gary to stay in the car and told James and Tate to follow him up to the house. The men exited the car, walked onto the front porch of the house, and rang the doorbell.

Brian O'Hara ("O'Hara") and Tina Grant ("Grant") resided in the house. At the time, Grant was in the bedroom trying to get her twenty-three-month-old granddaughter to sleep. O'Hara was asleep on the couch in the living room when he heard the doorbell ring at approximately 11:00 p.m. He initially ignored the doorbell, but when it kept ringing, he got up and went to the front door. He unlocked the door and opened it slightly, at which point Parish, Tate, and James forced their way into the house. Parish pointed his handgun at O'Hara and James put his knife to O'Hara's throat while Tate stayed near the door. All three of the men had again covered most of their faces with their shirts. O'Hara gave the men the twenty dollars he had on his person, hoping the men would leave.

Meanwhile, Grant had heard the doorbell ring and looked out of the bedroom to see O'Hara sitting on the couch with Parish pointing a gun at his head and James holding a knife. James and Tate saw Grant and ran to the bedroom door and pushed their way into the room. James and Parish then forced O'Hara into the bedroom at gunpoint and demanded money from Grant, who was sitting on the bed beside her granddaughter. Grant gave James the twenty dollars she had on her person.

Eventually, O'Hara took the robbers to his closet, where he kept two safes. But while in the closet, the men saw ammunition for O'Hara's handgun. When asked where his gun was, O'Hara told the men that it was in the nightstand. James then threw down his knife and retrieved the handgun from the nightstand. Parish pointed his gun at O'Hara and warned him and Grant not to call the police. The men then took the money, the safes, and O'Hara's gun and left the house. Grant quickly locked the front door while O'Hara telephoned the police.

On August 31, 2009, the State charged James with Class B felony conspiracy to commit armed robbery, Class B felony burglary, and Class B felony robbery. The State filed an amended information on September 3, 2009, alleging the same charges. A jury trial was held on November 29 and 30, 2010. At the conclusion of the trial, the jury found James guilty as charged. At the January 6, 2011 sentencing hearing, the trial court sentenced James to eighteen years on each count, with two years suspended to probation,

and ordered the sentences to be served concurrently. James now appeals.

## I. Double Jeopardy

 James first argues that his convictions for both conspiracy to commit robbery and robbery constitute double jeopardy in violation of the Indiana Constitution. Article 1, Section 14 of the Indiana Constitution states, "No person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), our supreme court held that two or more offenses are the "same offense" in violation of Article 1, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

 Here, James makes no claim under the statutory elements portion of the *Richardson* test. Instead, he claims that his convictions constitute double jeopardy under the "actual evidence" portion. "The actual evidence test prohibits multiple convictions if there is 'a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.' " *Davis v. State*, 770 N.E.2d 319, 323 (Ind.2002) (quoting *Richardson*, 717 N.E.2d at 53). The actual evidence test "is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

 A "reasonable possibility" that the trier of fact used the same facts to reach two convictions requires substantial-

ly more than a logical possibility. *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind.2008). " '[R]easonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* Application of this test requires the court to "identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]" *Spivey*, 761 N.E.2d at 832. In determining the facts used by the jury to establish the elements of each offense, we consider the charging information, jury instructions, and arguments of counsel. *Lee*, 892 N.E.2d at 1234; *Spivey*, 761 N.E.2d at 832; *Richardson*, 717 N.E.2d at 54 n. 48.

In the present case, the State charged James with conspiracy to commit armed robbery as follows:

> [James] did, with the intent to commit a felony, agree with another person, to-wit: Tony Parish, to commit the felony Armed Robbery, as defined under § 35–42–5–1(1) to knowingly take property from the presence of another person by using or threatening the use of force on any person while armed with a deadly weapon, and did engage in conduct constituting an overt act toward said Armed Robbery by covering his face to conceal his identity[.]

Appellant's App. p. 12. And the State charged James with robbery while armed with a deadly weapon as follows:

> [James] did knowingly take property, to wit: a safe, from the presence of another person, to wit: Brian O'Hara, by putting any person in fear, while the said [James] was armed with a deadly weapon, to wit: a knife[.]

*Id.* Clearly, these charges refer to different evidence—and different events—to support the charges. The conspiracy was alleged to have been consummated when James covered his face with his shirt,

whereas the robbery was alleged to have taken place when James and his cohorts took the safes from O'Hara's house.

Still, James argues that the jury could have relied upon the same evidentiary facts in finding him guilty of both crimes because the trial court instructed the jury regarding accomplice liability. James therefore contends that in both the information and the instructions, "the State made clear that they were using the agreement and action between [James] and Tony Parish to substantiate [both] allegations" and that "all of the essential elements necessary to prove the Conspiracy charge in Count I are the same elements necessary to prove [James]'s guilt as an accomplice in Count III." Appellant's Br. p. 12. We disagree.

The charges against James were not only alleged as separate and distinct acts; the charges as alleged were proved by separate and distinct evidentiary facts. James and his companions agreed to rob the liquor store at Tate's house and armed themselves. They then engaged in the overt act of "masking up" when they were in the car on the way to rob the liquor store. This evidence supports the conviction for conspiracy to commit armed robbery. The evidence supporting the robbery conviction was that James was armed with a knife when he and his companions demanded money from O'Hara and Grant and that James and his companions took the safes from O'Hara's house.

Any possibility of confusion on part of the jury was substantially diminished by the closing argument of the prosecuting attorney, who was meticulous in distinguishing the distinct evidence supporting the different charges:

> Really what the question before us is today is this, in fact, three separate crimes? And the answer to that is yes. The answer to that is absolutely yes. It's very important, ladies and gentlemen, for you to understand that there is separate evidence that's been presented supporting all of the elements of all three offenses charged, *separate and distinct evidence*. I want you to think about that very carefully.
>
> It was charged chronologically. Count I is Conspiracy to Commit Armed Robbery, Count II is Burglary, and Count III is Robbery. It's very important that you understand once the elements are satisfied the crime is completed. Okay. And we talked about this yesterday. The conspiracy. A conspiracy is an agreement to commit a felony and an overt act in furtherance of a felony. You had the intent to commit the felony all along.
>
> *Once you do the overt act, you have completed the crime of conspiracy,* and that's what happened on August 10, 2009. There was a conspiracy at Christopher Tate's house. There was an agreement amongst the defendant, Mr. Parish, Mr. Gary, and Mr. Tate to commit a robbery, an armed robbery. Why else would the defendant get a knife, a steak knife, from Christopher Tate's house? Why else? They weren't going to a restaurant, ladies and gentlemen. They weren't going to a barbecue. He was arming himself.
>
> \* \* \*
>
> ... Tommy Gary was responsible for driving. And what did he tell you? The plan was we were going to rob [the liquor store], and we hatched that plan.
>
> And what do they do when they get into the car? *They mask up. They put the mask on. This is the overt act.* August 10. You're not putting a mask on because it's cold out like it is today. You're putting a mask on why? To disguise your identity. That's what

Tommy Gary said. And what do they do? They proceed to drive. And [the liquor store] is not very far away. So he doesn't want to do that robbery, and they don't do that robbery.

So you ask yourself, well, you know, no harm, no foul. They didn't actually do that robbery. That's not correct, ladies and gentlemen. The purpose of the conspiracy charge is to criminalize conduct ... before it can actually come to fruition and do harm. This is precisely the reason why we have the conspiracy statute. It's a preventative statute.

It doesn't look and say, well, look at the harm that was caused. We're going to seek to vindicate that harm. It seeks to prevent harm. *So it's very important, ladies and gentlemen, that you think about this and you look at this evidence. These people wanted to commit a robbery. The fact that Tommy Gary said I'm not going to do the [liquor store robbery] is of no import because the crime by then had already been completed.*

Tr. pp. 525–28 (emphases added). Under these facts and circumstances, there was no reasonable possibility that the jury relied upon the same evidentiary facts to find James guilty of both conspiracy to commit armed robbery and robbery while armed with a deadly weapon.

The present case is quite unlike that in *Guffey v. State*, 717 N.E.2d 103, 107 (Ind. 1999), where our supreme court held that the defendant's convictions for both conspiracy to commit armed robbery and aiding the commission of armed robbery did constitute double jeopardy. The court concluded that there was a reasonable possibility that the jury used the same evidentiary facts—that defendant provided a handgun to the principal and waited on the principal to commit the robbery—to prove the essential elements of both conspiracy

to commit armed robbery and aiding in the commission of armed robbery. *Id.*

In contrast, here the charging information, the evidence adduced at trial, and the argument of the prosecuting attorney all support a conclusion that the jury did not use the same evidence to convict James of both conspiracy to commit robbery and aiding in the commission of robbery. *See Griffin v. State*, 717 N.E.2d 73, 88–89 (Ind. 1999) (although completed robbery could have served as overt act supporting conspiracy to commit robbery, jury was also instructed on facts of "substantial advance preparation" for the robbery that more likely served as the overt act).

## II. Jury Instruction

■ James also claims that the trial court erred in instructing the jury. Specifically, James claims that the trial court failed to inform the jury that he had to have the specific intent to commit a felony to be found guilty of conspiracy to commit armed robbery. James, however, failed to object to the instruction that was given and has therefore failed to preserve this issue for purposes of appeal. *See Mathews v. State*, 849 N.E.2d 578, 587 (Ind.2006). To avoid this procedural default, James contends that the trial court committed fundamental error in instructing the jury. "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Id.*

James's claim that the jury should have been instructed on specific intent is based on our supreme court's decision in *Spradlin v. State*, 569 N.E.2d 948 (Ind.1991). In *Spradlin*, the court held that a jury instruction purporting to set out the elements of attempted murder must inform the jury that the State must prove beyond

a reasonable doubt that the defendant, acting with the specific intent to kill the victim, engaged in conduct which was a substantial step toward such killing. *Id.* at 950. Our supreme court later explained that this rule applies also to defendants "convict[ed] for the offense of aiding an attempted murder." *Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind.2000).

James now asks us to apply the "*Spradlin* rule" to his crime of conspiracy to commit robbery. Unfortunately for James, our supreme court has already explained in no uncertain terms that the *Spradlin* rule does not apply to crimes other than attempted murder. *Richeson v. State,* 704 N.E.2d 1008, 1008 (Ind.1998). "[T]he special precautions we took in *Spradlin* are not warranted for lesser offenses."[1] *Id.* at 1011. *See also Henderson v. State,* 825 N.E.2d 983, 987 (Ind.Ct.App.2005) (holding that *Spradlin* rule does not apply to attempted robbery), *trans. denied; McCann v. State,* 742 N.E.2d 998 (Ind.Ct.App.2001) (holding that *Spradlin* rule does not apply to attempted rape), *summarily aff'd in relevant part,* 749 N.E.2d 1116 (Ind.2001). Because of the limited scope of the *Spradlin* rule, the trial court did not commit any error, much less fundamental error, in failing to mention specific intent when instructing the jury with regard to conspiracy to commit armed robbery.

### Conclusion

James's convictions for conspiracy to commit armed robbery and robbery while armed with a deadly weapon do not constitute double jeopardy, and the trial court did not commit fundamental error in instructing the jury with regard to the mens

rea required to convict James of conspiracy to commit armed robbery.

Affirmed.

BAILEY, J., and CRONE, J., concur.

---

1. In *Harris v. State,* 884 N.E.2d 399, 403–04 (Ind.Ct.App.2008), *trans. denied,* we held that the *Spradlin* rule does apply to attempted voluntary manslaughter because that crime is not a "lesser offense" as contemplated in *Richeson.*