**Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not
be regarded as precedent or cited
before any court except for the
purpose of establishing the defense of
res judicata, collateral estoppel, or the
law of the case.**



ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MARK SHEPARD,             )
                    )
    Appellant- Defendant,   )
                    )
       vs.             )    No. 49A04-1108-CR-415
                    )
STATE OF INDIANA,      )
                    )
    Appellee- Plaintiff,    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1003-MR-19208

**June 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Mark Shepard was convicted of conspiracy to commit robbery, a Class C felony, and felony murder. He appeals, raising the sole issue of whether Indiana's double jeopardy principles were violated by his conviction of both offenses. Concluding his convictions do not violate double jeopardy principles, we affirm.

## Facts and Procedural History

In the early hours of March 8, 2010, Mark Shepard, Ronald More, Randall Bowles, and Nick Khanthamany arrived at the residence of John Tracey for the purpose of robbing him. They believed that Tracey was a drug dealer and had possession of $14,000, thirty pounds of marijuana, and numerous pills. More and Bowles began discussing the robbery four to six months earlier. Approximately three to four days before March 8, More and Bowles asked Khanthamany if he would like to help with the robbery. Khanthamany declined so More and Bowles asked Shepard to participate and convince Khanthamany to help. Shepard agreed to participate and, shortly after, Khanthamany did as well.

On March 7, all four men came together at the shared residence of More and Bowles to discuss the details of the robbery. They possessed two guns, a .25 caliber gun belonging to Bowles and a .40 caliber gun belonging to Khanthamany. The men had ammunition for the .40 caliber handgun, but had not yet obtained ammunition for the .25 caliber gun. At approximately 10 or 11 p.m., the four men left and went to Debora Khanthamany's home. They continued discussing the robbery, focusing on the plan and how to divide anything they recovered from Tracey's home. Khanthamany agreed to bring a third gun, which was his own .25 caliber handgun, and ammunition. When the

2

four men left Debora's home in a white Buick LeSabre, Shepard was armed with a loaded .40 caliber handgun and More and Khanthamany were armed with loaded .25 caliber handguns. The men drove to Tracey's home dressed in black and gray clothing. All covered their faces with blue bandanas and Bowles and More wore ski masks.

While the four men were attempting to find a way into Tracey's residence, they noticed a white car parked outside that had not been there when they arrived. They assumed the driver would return shortly and decided to attempt to gain entry into Tracey's residence by putting a gun to the head of the driver and forcing him to take the four men into the residence. To facilitate that plan, they let the air out of the tires of the car. While Shepard, More, Bowles, and Khanthamany were flattening the tires, Seth Habig, a friend of Tracey's, came out of Tracey's apartment and saw the four men surrounding the car. Habig went back inside to warn Mark Jenkins, another friend of Tracey's, that some men were disturbing Jenkins's car.

Habig, Jenkins, and Tracey armed themselves with a hammer, a hatchet, some knives, and mace, and went outside to investigate. Habig, Jenkins, and Tracey discovered the white Buick LeSabre, which belonged to Shepard. The three men proceeded to "slice their tire," "bash[] out their windows" and spray mace on the car. Transcript at 85. Eventually, Habig, Jenkins, and Tracey discovered Shepard, More, Bowles, and Khanthamany hiding in the bushes and said "there's the motherfuckers right there." Id. at 128. Upon hearing those words, Shepard and Khanthamany began shooting. Tracey was shot six times and later died from his injuries. Shepard kicked Tracey in the face before the four men escaped in the white Buick LeSabre. Shepard later told his girlfriend he shot Tracey because "[h]e thought the dude had a gun because .

3

. . [s]omething shiny was in his hands." Id. at 232. Shepard, More, Bowles, and Khanthamany were later arrested. The guns were never recovered.

The State charged Shepard with conspiracy to commit robbery as a Class B felony, attempted robbery as a Class A felony, and felony murder. Following a bench trial, Shepard was found guilty as charged. The trial court entered the conspiracy to commit robbery as a Class C felony conviction and did not enter a conviction for attempted robbery. Shepard was sentenced to sixty years for felony murder and five years for conspiracy to commit robbery, to be served concurrently. Shepard now appeals his convictions.

Discussion and Decision

I. Double Jeopardy

Article 1, section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." "[T]wo or more offenses are the 'same offense' . . . if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original, footnote omitted). To establish that "two challenged offenses constitute the 'same offense' in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. at 53 (footnote omitted). The "actual evidence test 'is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several,

4

but not all, of the essential elements of a second offense.'" James v. State, 953 N.E.2d 1191, 1194 (Ind. Ct. App. 2011) (quoting Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002)). "When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation." Richardson, 717 N.E.2d at 54. If not, it is necessary to vacate one conviction. Id.

## II. Actual Evidence

Shepard, making a claim only under the actual evidence test, contends "[t]he Information set forth the 'substantial act' of the attempted robbery which resulted in the felony murder and the 'overt act' in furtherance of the conspiracy as the same facts." Appellant's Brief at 8. Application of the actual evidence test requires the reviewing court to identify the essential elements of the challenged crimes and evaluate the evidence from the fact-finder's perspective, considering the charging information, jury instructions, and arguments of counsel where relevant. James, 953 N.E.2d at 1194.

The essential elements of the conspiracy charge are that (1) Shepard (2) agreed with another person (3) to commit the crime of robbery and (4) one of the conspirators performed an overt act in furtherance of the agreement. Ind. Code § 35-41-5-2(a). Notably, the conspiracy was charged as a Class B felony, which required proof of an agreement to commit a robbery while armed with a deadly weapon or resulting in bodily injury to a person other than the defendant, see Ind. Code § 35-42-5-1 (defining robbery), and was entered as a Class C felony conviction, which required proof of an agreement to commit a robbery by using or threatening the use of force on any person or by putting any person in fear, see id. The essential elements of the felony murder charge are that (1)

5

Shepard (2) killed another person (3) while attempting to commit robbery. Ind. Code § 35-42-1-1(2).

The Information charging Shepard with conspiracy to commit robbery alleges in part that "Mark Shepard, Nick Khanthamany, Randall S. Bowles, and/or Ronald A. More discussed and planned the details of the robbery and performed the following overt act(s) in furtherance of the agreement, that is: obtained guns and ammunition, went to the residence where Tracey was known to be, and approached the residence for the purpose of carrying out the robbery." Appellant's Appendix at 105. The Information charging Shepard with felony murder alleges that while "Mark Shepard . . . [was] participating in the attempted robbery John Tracey was shot several times and died as a result of that shooting." Id. at 103. The Information charging Shepard with attempted robbery, the felony underlying the murder charge, alleges in part that Shepard attempted to rob Tracey "by engaging in conduct, described as: after discussing and planning the robbery and obtaining guns and ammunition . . . went to [ ] Hanna Ave. to locate the victim and began to approach the residence, which constituted a substantial step toward the commission of [robbery]." Id. at 104.

We would agree that Shepard could not be convicted of both attempted robbery and conspiracy to commit robbery on the basis of the overlap in evidence of the substantial step toward the attempted robbery and the overt act for the conspiracy. However, as an overt act of the conspiracy, the attempted robbery was completed when Shepard and his compatriots armed themselves, went to Tracey's residence, and approached the home with the intent to take money and drugs from him by their show of force. The crime of murder, however, required not only the attempted robbery but also

6

Tracey's death, which was caused when Shepard and the others damaged a car outside the residence and hid to await the driver's return, opening fire when Tracey and his friends came out to investigate. These acts were not part of the overt act for the conspiracy to commit robbery.

In our analysis, the "actual evidence test' is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Richardson, 717 N.E.2d at 49. In Spivey, our supreme court held that the actual evidence used to prove the elements of conspiracy to commit burglary did not also prove all of the elements of felony murder predicated upon the burglary:

> As an overt act of the conspiracy, the burglary was completed when the defendant entered the residence of [the victim] with the intent to commit theft. . . . The defendant's crime of murder, however, required not only the burglary but also the death of [the victim], which is not part of the overt act for the conspiracy to commit burglary. Thus the overt act was not the same as the crime of murder, and the offenses of conspiracy [to commit burglary] and murder are sufficiently distinct to permit the defendant to be separately convicted and punished for each.

761 N.E.2d at 834; see also Henderson v. State, 769 N.E.2d 172, 178 (Ind. 2002) (holding under the actual evidence test "the offenses of felony-murder and class A felony conspiracy were each established by the proof of a fact not used to establish the other offense" and there was no violation of the Indiana Double Jeopardy clause). Likewise in this case, the evidence presented to establish that Shepard agreed to participate in the robbery and that the four men engaged in an overt act in furtherance of the conspiracy, thus proving conspiracy to commit robbery, does not also prove all of the essential elements of felony murder.

7

<u>Conclusion</u>

Based on the foregoing, we conclude that double jeopardy principles have not been violated by Shepard's convictions for conspiracy to commit robbery and felony murder, and therefore we affirm.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.