## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 17 2015, 8:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Montrail Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 17, 2015

Court of Appeals Case No.
20A04-1505-CR-406

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1311-FB-132

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Montrail Williams, together with four other individuals, planned a burglary, which they completed on the morning of November 4, 2013. During the commission of the burglary, Williams and his cohorts entered the victims' residence, forced two of the victims to kneel on the ground at gunpoint, tied another to a chair, and took property belonging to the victims. Williams was subsequently convicted of Class C felony robbery, Class B felony burglary, Class C felony criminal confinement, Class B felony conspiracy to commit burglary, and Class B felony possession of a firearm by a serious violent felon. He was sentenced to an aggregate term of sixty-eight years, with fifty-five years executed and thirteen years suspended to probation.

[2] On appeal, Williams contends that the evidence is insufficient to sustain his convictions, that his convictions for burglary and conspiracy to commit burglary violate the prohibitions against double jeopardy, and that his sentence is inappropriate. We affirm.

# Facts and Procedural History

[3] In November of 2013, Cynthia Contreras lived in a mobile home in Goshen with her husband, Jose; her daughter, Brenda Fernandez; and her daughter-in-law, Thaly Silvestre. Three minor children also lived in the mobile home.

[4] On the morning of November 4, 2013, Contreras's husband left for work at approximately 5:20. After Contreras's husband left for work, Williams, Antoine McDuffie, Davon Crenshaw, and Armando Gonzalez, Jr. acted on an

agreement to break into the mobile home. Upon breaking into the mobile home, the men concealed their identities by wearing "hoodie[s]", masks on their faces, and gloves on their hands. Tr. p. 361. They were armed with at least three guns and carried flashlights. At the time of the break-in, the mobile home was occupied by Contreras, Fernandez, and the three children. Silvestre, who was pregnant, arrived home during the break-in.

[5] The men forced Contreras and Fernandez to kneel down at gunpoint. The men asked Contreras for "gold and dope." Tr. p. 362. When Contreras indicated that the women did not have any gold or dope the men got upset and told Contreras that they thought she was lying. At some point, the men tied up Silvestre, who was approximately seven months pregnant. The men also threatened to kill everyone in the trailer if anyone called the police. The women were all scared for their safety as well as the safety of the children.

[6] Upon leaving the mobile home, the men stole an X-Box gaming system, a few X-Box games, $350.00 from Contreras's purse, and Contreras's pain medication. Once certain the men were gone, Silvestre freed herself. Sometime later, the women called the police.

[7] Fernandez subsequently told the police that she thought she recognized the voice of one of the intruders as Gonzalez, the boyfriend of someone with whom she worked. Fernandez identified where her co-worker lived with Gonzalez. Fernandez also informed police that she had previously seen Gonzalez with Crenshaw.

[8] When members of the Goshen Police Department arrived at the apartment identified by Fernandez, they encountered Williams, Crenshaw, and Matthew Allen. The police were eventually allowed inside the apartment and, after receiving a search warrant, recovered the X-Box gaming system, the X-Box games, and a pill bottle containing pills. Officers also recovered two bags containing a bandana, gloves, dark clothing, a ski mask, and three loaded handguns. Williams's DNA was subsequently recovered from the ski mask.

[9] Police later encountered McDuffie, who was carrying a flashlight and whose shoes matched the shoe pattern found at the crime scene. When questioned about the robbery, McDuffie stated, "Man, I just drove." Tr. p. 159. McDuffie indicated to the investigating officer that he, Crenshaw, Williams, and Gonzalez planned and committed the burglary and robbery. Gonzalez subsequently admitted to participating in the burglary and robbery.

[10] In addition, at trial, Allen testified that he and the other men had been "hanging out" at Gonzalez's apartment drinking and smoking marijuana on the night before the crime was committed. Tr. p. 838. Allen further testified that while drinking and smoking marijuana, he had heard Gonzalez, McDuffie, and the other men talk about breaking into and robbing a home. Allen also observed the men passing around three handguns. Allen later observed the men dress in dark jackets and hooded sweatshirts and leave the apartment at approximately 4:30 a.m. on November 4, 2013.

[11] On November 12, 2013, Appellee-Plaintiff the State of Indiana (the "State") charged Williams with Count I, Class B felony robbery while armed with a deadly weapon; Count II, Class B felony burglary; Count III, Class B felony criminal confinement; Count IV, Class B felony conspiracy to commit burglary; and Count V, Class B felony unlawful possession of a firearm by a serious violent felon. Williams's jury trial began on February 2, 2015, after which the jury found Williams guilty of Counts I through IV. Williams waived his right to a jury trial on Count V. On March 2, 2015, the trial court found Williams guilty of Count V.

[12] On April 16, 2015, Williams filed a petition asking the trial court to reconsider its guilty finding on Count V. The trial court subsequently denied Williams's petition. The trial court also entered an amended judgment, reducing Williams's convictions in Counts I and III from Class B felonies to Class C felonies. The amended judgment reflected that Williams was convicted of Count I, Class C felony robbery; Count II, Class B felony burglary; Count III, Class C felony Criminal Confinement; Count IV, Class B felony conspiracy to commit burglary; and Count V, Class B felony unlawful possession of a firearm by a serious violent offender.

[13] In sentencing Williams, the trial court found the following mitigating factors: Williams's age, the statements made by Williams and Williams's counsel, and Williams's good conduct during the course of the trial in relation to one of Williams's co-defendants. The trial court also found the following aggravating factors: Williams's criminal history; the unsuccessful nature of prior attempts to

rehabilitate Williams; the fact that there were multiple crimes committed by multiple perpetrators against multiple victims, one of the victims was pregnant, and three of the victims were children; and Williams is considered a high risk to reoffend. Finding that the aggravating factors outweighed the mitigating factors, the trial court imposed the following sentence: Count I, eight years, with seven years executed and one year suspended to probation; Count II, twenty years, with sixteen years executed and four years suspended to probation; Count III, eight years, with seven years executed and one year suspended to probation; Count IV, twenty years, with sixteen years executed and four years suspended to probation; and Count V, twenty years, with sixteen years executed and four years suspended to probation. The trial court ordered that the sentences for each count should run consecutively for an aggregate sentence of sixty-eight years, with fifty-five years executed and thirteen years suspended to probation. The trial court also ordered that Williams's sentence in the instant matter should be served consecutively to Williams's sentence in Cause Number 20D02-1010-FB-25, for which Williams had been on probation when he committed the underlying offenses. This appeal follows.

# Discussion and Decision

## I. Sufficiency of the Evidence

[14] Williams contends that the evidence is insufficient to sustain his convictions for robbery, burglary, criminal confinement, conspiracy to commit burglary, and unlawful possession of a firearm by a serious violent felon.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses, *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002), as the jury, acting as the trier-of-fact, is "'free to believe whomever they wish.'" *Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008) (quoting *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996)).

[15] "[A] conviction may be based purely on circumstantial evidence." *Hayes v. State*, 876 N.E.2d 373, 375 (Ind. Ct. App. 2007) (citing *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)), *trans. denied*. "'On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence.'" *Id.*

(quoting *Moore*, 652 N.E.2d at 55). "It is enough if an inference reasonably tending to support the conviction can be drawn from the circumstantial evidence." *Id*. (citing *Moore*, 652 N.E.2d at 55). Thus, where circumstantial evidence is used to establish guilt, "'the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence.'" *Klaff*, 884 N.E.2d at 274-75 (quoting *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000)).

[16] Further, Indiana Code section 35-41-2-4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another to commit an offense commits that offense" himself.

> In determining whether there was sufficient evidence for purposes of accomplice liability, we consider such factors as: 1) presence at the scene of the crime; 2) companionship with another at the scene of the crime; 3) failure to oppose commission of the crime; and 4) course of conduct before, during, and after occurrence of the crime. [ ] A defendant's mere presence at the crime scene, or lack of opposition to a crime, standing alone, is insufficient to establish accomplice liability. *Tobar v. State*, 740 N.E.2d 109, 112 (Ind. 2000). Flight shows consciousness of guilt. *State v. Torphy*, 217 Ind. 383, 387-88, 28 N.E.2d 70, 72 (1940).
>
> These factors may be considered in conjunction with a defendant's course of conduct before, during, and after the crime, and a defendant's companionship with the one who commits the crime. *Id*. Furthermore, accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action. *Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000). Moreover, an accomplice is

equally culpable as the one who commits the actual crime. *Hauk v. State*, 729 N.E.2d 994, 998 (Ind. 2000).

*Tuggle v. State*, 9 N.E.3d 726, 736 (Ind. Ct. App. 2014), *trans. denied*. It is not necessary for Williams to have participated in every element of the crime under a theory of accomplice liability. *Id*. (citing *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002)).

## A. Robbery

[17] In November of 2013, Indiana Code section 35-42-5-1 provided as follows: "A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Class C felony." Thus, in order to convict Williams of robbery, the State was required to prove that Williams knowing or intentionally took property from the victims by threating the use of force or by putting the victims in fear.

[18] In arguing that the evidence is insufficient to sustain his robbery conviction, Williams claims that because none of the victims identified him as one of the perpetrators, the State failed to prove his involvement in the robbery beyond a reasonable doubt, but instead only proved that there was a possibility that he participated in the robbery. We disagree.

[19] Allen testified that on the night before the robbery, he was "hanging out" with Gonzalez, Williams, Crenshaw, and McDuffie and heard the men discussing a plan to break into and rob a home. Tr. p. 838. Allen also testified that he

observed the men passing around three handguns and that he later observed Gonzalez, Williams, Crenshaw, and McDuffie dress in dark jackets and hooded sweatshirts before leaving the apartment at approximately 4:30 a.m. on November 4, 2013.

[20] The State presented evidence that the perpetrators were armed with at least three loaded handguns, wore dark clothing, and covered their faces with masks during the commission of the crimes. The perpetrators forced two of the victims to kneel at gunpoint and tied another to a chair. They put the victims in fear for their safety as they threatened to come back and kill everyone if anyone called the cops. Upon leaving the residence, the perpetrators took an X-Box gaming system, a few X-Box games, $350.00 from Contreras's purse, and Contreras's pain medication. Williams's DNA was subsequently recovered from a black ski mask which was recovered from Gonzalez's apartment with the stolen property and other dark clothing. When, during the course of their investigation, police arrived at the apartment, Williams was present and was playing games on the stolen X-Box gaming system. One of the victims informed police that she recognized one of the perpetrators as Gonzalez.

[21] The above-stated evidence is sufficient to prove that Williams participated in the robbery. The State presented both circumstantial evidence and DNA evidence to prove Williams's participation. Upon review, we conclude that the DNA evidence considered with Williams's actions prior to the crime; his actions after the commission of the crime; and his companionship, both before and after commission of the robbery, with individuals who admitted to

committing the crime is sufficient to prove that Williams was an active participant in the commission of the robbery. Furthermore, even if the evidence were to be found to fall short of proving that Williams was an active participant in the commission of the robbery, Williams can nonetheless be held culpable because the evidence, at the very least, proves that he was an accomplice to the commission of the robbery. *See Tuggle*, 9 N.E.3d at 736.

## B. Burglary

[22] In November of 2013, Indiana Code section 35-43-2-1 provided as follows: "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is: (1) a Class B felony if: (A) it is committed while armed with a deadly weapon or (B) the building or structure is a: (i) dwelling; or (ii) structure used for religious worship[.]" Thus, in order to convict Williams of burglary, the State was required to prove that Williams broke into the building of another with the intent to commit a felony, *i.e.*, robbery, therein and that Williams was either armed with a deadly weapon, *i.e.*, a handgun, or that the building was a dwelling.

[23] In arguing that the evidence is insufficient to sustain his burglary conviction, Williams again claims that because none of the victims identified him as one of the perpetrators, the State failed to prove his involvement in the burglary beyond a reasonable doubt, but instead only proved that there was a possibility that he participated in the burglary. Again, we disagree. For the same reasons

discussed above, we conclude that the evidence presented at trial is sufficient to sustain Williams's burglary conviction.

## C.  Criminal Confinement

In November of 2013, Indiana Code section 35-42-3-3 provided as follows:

> (a) A person who knowingly or intentionally:
>
>> (1) confines another person without the other person's consent
>
>> ****
>
> commits criminal confinement.…
>
> (b) The offense of criminal confinement defined in subsection (a) is:
>
>> (1) a Class C felony if:
>>
>>> (A) the person confined or removed is less than fourteen (14) years of age and is not the confining or removing person's child;
>>>
>>> (B) it is committed by using a vehicle; or
>>>
>>> (C) it results in bodily injury to a person other than the confining or removing person; and
>>
>> (2) a Class B felony if it:
>>
>>> (A) is committed while armed with a deadly weapon[.]

Although the jury found Williams guilty of Class B felony criminal confinement, the trial court entered a judgment of conviction for Class C felony criminal confinement. In order to prove that Williams committed criminal confinement as a Class C felony, the State was required to prove that Williams knowingly or intentionally confined a person under the age of fourteen without the other person's consent and that the person confined was not Williams's child.

[25] In arguing that the evidence is insufficient to sustain his conviction for criminal confinement, Williams again claims that because none of the victims identified him as one of the perpetrators, the State failed to prove his involvement in the confinement beyond a reasonable doubt, but instead only proved that there was a possibility that he participated in the confinement. Again, we disagree.

[26] The State presented evidence that three of the victims were children under the age of fourteen. Nothing in the record suggests that any of the children had any relation to Williams. Thus, for the same reasons discussed above, we conclude that the evidence presented at trial is sufficient to sustain Williams's conviction for criminal confinement.

## D. Conspiracy to Commit Burglary

[27] In November of 2013, Indiana Code section 35-41-5-2 provided that "A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony." Indiana Code section 35-

41-5-2 further provided that "The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." Here, the State alleged that Williams conspired to commit Class B felony burglary. As such, the State was required to prove that Williams agreed to commit the crime of burglary, as is defined above, and that Williams committed an overt act in furtherance of the agreement.

[28] In arguing that the evidence is insufficient to sustain his conviction for conspiracy to commit burglary, Williams claims that the State failed to present evidence of any agreement to commit the burglary or an overt act committed by Williams in furtherance of the agreement. We disagree.

[29] The State alleged that Williams committed the overt act of masking his face. The recovery of Williams's DNA recovered from the ski mask found with the other dark clothing and some of the property taken from the victims is evidence that Williams did, in fact, commit the overt act of masking his face. The State also presented evidence that the men came up with the plan, *i.e.*, the agreement, to commit the burglary on the night before they committed it. Thus, for the same reasons discussed above, we conclude that the evidence presented at trial is sufficient to sustain Williams's conviction for conspiracy to commit burglary.

## E. Possession of a Firearm by a Serious Violent Felon

[30] In November of 2013, Indiana Code section 35-47-4-5(c) provides that "A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon." Indiana

Code section 37-47-4-5(a) defined a "serious violent felon" as one who has been convicted of committing a serious violent felony or attempting to commit a serious violent felony in either Indiana or any other jurisdiction "in which the elements of the crime for which the conviction was entered are substantially similar to the elements of a serious violent felony." Thus, in order to prove that Williams committed possession of a firearm by a serious violent felon, the State was required to prove that Williams possessed a firearm after having been convicted of committing a serious violent felony.

[31] Williams does not contest the fact that he has previously been convicted of a serious violent felony. Instead, in arguing that the evidence is insufficient to sustain his conviction for criminal confinement, Williams again claims that because none of the victims identified him as one of the perpetrators, the State failed to prove his involvement in the break-in beyond a reasonable doubt. Williams alternatively argues that because there were five alleged perpetrators but only three alleged firearms, the State presented nothing more than speculation as to which of the men possessed the firearms. We disagree.

[32] The State presented evidence that the men were in possession of three handguns on the night before the commission of the burglary. The victims testified to observing at least three handguns during the commission of the crime. Three handguns matching the descriptions of these guns were recovered from the perpetrators and Gonzalez's apartment after the commission of the crime. Further, Gonzalez told investing officers that he was not armed during the robbery, and McDuffie told investigating officers that he "just drove." Tr. p.

1059. These statements support the inference that of the five alleged perpetrators, Williams was one of the three who were armed with a handgun.

[33] Again, because a conviction may be based purely on circumstantial evidence, the jury, acting as the trier of fact, is free to believe the witnesses as it sees fit, and we, acting as the reviewing court, will not reweigh the evidence or assess the credibility of the witnesses, we conclude that the evidence is sufficient to sustain Williams's conviction for possession of a firearm by a serious violent felon. *See Stewart*, 768 N.E.2d at 435; *Klaff*, 884 N.E.2d at 274; *Hayes*, 876 N.E.2d at 375.

## II. Double Jeopardy

[34] Williams also contends that his convictions for Class B felony burglary and Class B felony conspiracy to commit burglary violate Indiana's prohibitions against double jeopardy. "Whether convictions violate double jeopardy is a pure question of law, which we review de novo." *Ellis v. State*, 29 N.E.3d 792, 797 (Ind. Ct. App. 2015), *trans. denied*. Article 1, Section 14 of the Indiana Constitution prohibits double jeopardy, providing that "[n]o person shall be put in jeopardy twice for the same offense." "In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), our supreme court held that two or more offenses are the 'same offense' in violation of Article 1, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also

establish the essential elements of another challenged offense." *James v. State*, 953 N.E.2d 1191, 1194 (Ind. Ct. App. 2011).

[35]     In the instant matter, Williams makes no claim under the statutory elements portion of the *Richardson* test. Instead, he claims that his convictions constitute double jeopardy under the "actual evidence" portion.

> Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. [*Richardson*, 717 N.E.2d at 53]. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id*. The actual evidence test is applied to all the elements of both offenses. "In other words … the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).
>
> Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." *Richardson*, 717 N.E.2d at 53 n. 46. The existence of a "'reasonable possibility' turns on a practical assessment of

whether the [fact finder] may have latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. *Id*. at 1234.

*Garrett v. State*, 992 N.E.2d 710, 719-20 (Ind. 2013) (brackets in original).

[36] Again, Williams argues on appeal that his convictions for burglary and conspiracy to commit burglary violate the actual evidence test set forth in *Richardson*. In making this argument, Williams acknowledges that the jury instruction for the conspiracy charge directs the jury to consider the masking of faces as the overt act in furtherance of the conspiracy. Williams argues, however, that "[b]y tying the conspiracy to commit burglary charge to the act of masking, once the jury concluded that [Williams] had participated in the burglary, it had no choice but to also find him guilty of the conspiracy to commit burglary charge." Appellant's Br. p. 19. Thus, Williams asserts that "[t]his results in a reasonable possibility that the jury relied on the same facts for both the burglary and conspiracy to commit burglary convictions, because the conspiracy to commit burglary offense cannot be established without considering the facts of the burglary itself." Appellant's Br. p. 19.

[37] We disagree and observe that the Indiana Supreme Court has held that "a defendant may be convicted of both conspiracy to commit a felony and commission of the underlying felony." *Johnson v. State*, 749 N.E.2d 1103, 1108 (Ind. 2001) (citing *Griffin v. State*, 717 N.E.2d 73, 89 (Ind. 1999), *cert. denied*). A double jeopardy violation occurs *only* where the same evidence used to prove

the overt act committed in furtherance of the conspiracy also proves the commission of the underlying crime. *Id.* (citing *Turnley v. State*, 725 N.E.2d 87, 91 (Ind. 2000); *Griffin*, 717 N.E.2d at 89), emphasis added.

[38]  Here, both the charging information and jury instructions specified that the overt act used to prove the conspiracy charge was the masking of faces. The charging information relating to the burglary charge reads as follows:

> The undersigned affiant swears that on or about the 4th day of November, 2013, at the County of Elkhart, State of Indiana, [Williams], [Allen], [McDuffie], [Crenshaw], and [Gonzalez], and they and each of them, did break and enter the dwelling of another person, to wit: Brenda Fernandez, with the intent to commit a felony therein, to wit: Theft, that is to knowingly or intentionally exert unauthorized control over property of another person with the intent to deprive the other person of any part of its value or use; all of which is contrary to the form of I.C. § 35-43-2-1(1)(B)(i) & § 35-41-2-4; contrary to the form of the statute in such cases made and provided; and, against the peace and dignity of the State of Indiana.

Appellant's App. p. 16. The charging information relating to the conspiracy to commit burglary charge reads as follows:

> The undersigned affiant swears that on or about the 4th day of November, 2013, at the County of Elkhart, State of Indiana, one [Williams] did, with the intent to commit a felony, agree with other persons, to wit: [Crenshaw], [Allen], [McDuffie], and [Gonzalez], to commit the felony Burglary, defined in I.C. § 35-43-2-1(1), as to break and enter the dwelling of another person with intent to commit a felony therein, and did engage in conduct constituting an overt act toward said Burglary by masking their faces; all of which is contrary to the form of I.C. §

35-41-5-2(a) & § 35-43-2-1(1)(B)(i); contrary to the form of the statute in such cases made and provided; and, against the peace and dignity of the State of Indiana.

Appellant's App. p. 16. The final jury instructions also reflected that the overt act relied on by the State to prove the conspiracy charge was Williams's act of masking his face. As such, the record demonstrates that the conspiracy to commit robbery was alleged to have been consummated when Williams masked his face and the robbery was alleged to have taken place when Williams and his cohorts took property belonging to the victims from the victims' home. The evidence relating to the masking of faces was separate evidence of that proffered to prove the burglary charge itself.

[39] We find the facts of the instant matter to be similar to the facts presented in our opinion in *James v. State*, 953 N.E.2d 1191 (Ind. Ct. App. 2011). In *James*, we concluded that the defendant's convictions for burglary and conspiracy to commit burglary did not violate the actual evidence test of the Indiana prohibitions against double jeopardy because the conspiracy was alleged to have been consummated when the defendant covered his face and the robbery charge was alleged to have taken place when the defendant and his cohorts took property from the victims' home. *Id*. at 1194-95. We also find that this case is easily distinguishable from the Indiana Supreme Court's decision in *Johnson*. In *Johnson*, neither the charging information nor the final jury instructions contained any mention of what overt acts the State relied upon in proving the conspiracy charge. 749 N.E.2d at 1109. The Indiana Supreme Court found

that in that case, there was a reasonable possibility that the evidence proving conspiracy to commit burglary also established the essential elements of the burglary charge. *Id*.

[40] Similar to our conclusion in *James*, we conclude in the instant matter that there is not a reasonable possibility that the jury relied on all of the same evidence in finding Williams guilty of both burglary and conspiracy to commit burglary. The record clearly demonstrates that the State relied upon evidence proving that Williams masked his face to prove that he committed the overt act necessary to prove the conspiracy charge. This evidence was not necessary to prove any element of the burglary charge. As such, we conclude that Williams's convictions for both Class B felony burglary and Class B felony conspiracy to commit burglary do not violate the prohibitions against double jeopardy.

## III. Appropriateness of Sentence

[41] Again, the trial court sentenced Williams to an aggregate term of sixty-eight years, with fifty-five years executed and 13 years suspended to probation. Williams contends on appeal that his sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on

focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[42] With respect to the nature of Williams's offenses, the record demonstrates that Williams and the other men burgled the residence of Contreras and her family. While in the residence, the men ordered Contreras and Fernandez to the ground at gunpoint and tied Silvestre, who was approximately seven months pregnant, to a chair. Children were present in the residence at the time of the burglary and theft. The men took an X-Box gaming system, some X-Box games, cash, and prescription medication from the residence. The men also threatened to come back and kill everyone in the trailer if anyone called the police. The men's actions placed Contreras, Fernandez, and Silvestre in fear for their own safety, as well as the safety of the children present in the residence. The records demonstrate that Williams participated in a very serious and violent course of events.

[43] Further, we disagree with Williams's assertion that the record indicates that he is of good character. Rather, we find that Williams is of troubling character. Review of the record indicates that since 2007, Williams has amassed a rather extensive criminal history which includes juvenile adjudications and both misdemeanor and felony convictions. As a juvenile, Williams was adjudicated

to be delinquent for committing what would have the following offenses if committed by an adult: Class A misdemeanor criminal mischief, Class A misdemeanor battery, Class A misdemeanor resisting law enforcement, Class D felony theft, and Class B felony burglary. William's adult criminal history includes a prior conviction for misdemeanor operating a motor vehicle without ever receiving a license and two prior convictions for Class B felony burglary. It is also of note that Williams was on probation for his two prior adult convictions for Class B felony burglary when he committed the instant offenses. Williams's criminal history, which appears to be escalating in seriousness, indicates that he has repeatedly engaged in criminal behavior. In addition, Williams's failure to effectuate any positive change on his behavior as a result of his repeated interactions with the criminal justice system indicates an unwillingness by Williams to reform his behavior to conform to the rules of society.

[44] In light of the facts surrounding the nature of Williams's offenses and his character, we conclude that Williams has failed to meet his burden of persuading us that his aggregate sixty-eight-year sentence, of which thirteen years were suspended to probation, is inappropriate.

# Conclusion

[45] In sum, we conclude that the evidence is sufficient to sustain Williams's convictions, Williams's convictions for burglary and conspiracy to commit

burglary do not violate the prohibitions against double jeopardy, and Williams's sentence is not inappropriate.

[46] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.